Gerald L. Roylance
1168 Blackfield Way
Mountain View, CA 94040-2305

Phone 1-650-948-1790

E-filing

ADR
FILED
MAY 27 2014
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**United States District Court**
**Northern District of California, San Jose Division**

| | |
|---|---|
| GERALD ROYLANCE, | Case No. 5:14-cv-**14-02445-PSG** |
| Plaintiff, | COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF |
| vs. | 1. Telephone Consumer Protection Act |
| ALG REAL ESTATE SERVICES, INC. d/b/a AMERIFUND LENDING GROUP; MARK AUGUSTUS; DONECIA LA SHAUN AUGUSTUS; DOES 1-200 | 2. Telephone Consumer Protection Act<br>3. Unfair Business Practices<br>4. Unfair Advertising Practices |
| Defendants | |

## I. JURISDICTION AND VENUE

1. **Jurisdiction.** Violations of 47 U.S.C. § 227 create federal question jurisdiction. Violations of California laws fall under supplemental jurisdiction.

2. **Venue.** Venue is appropriate in the Northern District of California because a substantial portion of the events occurred in this District.

3. **Intradistrict Assignment.** The San Jose Division is appropriate. Venue in Santa Clara County is proper under California Code of Civil Procedure § 395(b) because the allegations involve telephone communications to a residential telephone in Santa Clara County. Venue is also proper under California Code of Civil Procedure § 395(a) because the injury occurred in Santa Clara County.

1

Complaint for Damages and Injunctive Relief

## II. DECLARATION ON VENUE

4. Venue in Santa Clara County is proper under California Code of Civil Procedure § 395(b) because the allegations involve Telephone Communications to a residential telephone in Santa Clara County. Venue is also proper under California Code of Civil Procedure § 395(a) because the injury occurred in Santa Clara County. Venue is proper under California Civil Code § 1780(c) because a substantial portion of each transaction occurred in Santa Clara County.

## III. IDENTIFICATION

5. Plaintiff GERALD ROYLANCE is an individual residing in Mountain View, CA.

6. ALG REAL ESTATE SERVICES, INC. d/b/a AMERIFUND LENDING GROUP ("AMERIFUND") is a California corporation with entity number C2158079. Its agent for service is Mark Fleischmann, 23734 Valencia Blvd Ste 206, Valencia, CA 91355. In 2010, its principal place of business was 31225 La Baya Drive Suite 211, Westlake Village, CA 91362. Its California Department of Real Estate ("DRE") license ID is 01258835; DRE records show that it does business as AMERIFUND LENDING GROUP.

7. MARK AUGUSTUS is an individual. LinkedIn profiles for "Mark Augustus" say he is a "Senior Loan Processor" at "First Global" and an owner of "First Global".

8. DONECIA LA SHAUN AUGUSTUS has a broker's license from the California Department of Real Estate ("DRE"), license number 01236597, issued 24 August 2010.[1] The license lists a former name of DONECIA LA SHAUN MONTGOMERY. The mailing address is PO Box 35664, Los Angeles, CA 90035. A main office is listed at 15332 Antioch St Ste 516, Pacific Palisades, CA 90272. The address appears to be a private mailbox at UPS Store #1787. In June 2010, the DRE listed DONECIA LA SHAUN MONTGOMERY, license number 01236597, as a salesperson; the employing broker was ALG REAL ESTATE SERVICES, INC. DONECIA LA SHAUN AUGUSTUS would originate loans in Santa Clara County.

9. 1ST GLOBAL DIVERSIFIED, INC. is a California corporation with entity number C3279426. Its agent for service is DONECIA LA SHAUN AUGUSTUS at the Antioch St address. The file date is 16 February 2010; the current status is suspended. Plaintiff is ignorant of the relationship of the corporation to the telephone calls; the corporation was not listed on the loan documents received by the

---

[1] http://www2.dre.ca.gov/PublicASP/pplinfo.asp?License_id=01236597

Complaint for Damages and Injunctive Relief

plaintiff.

10. The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 to 200, inclusive, being unknown, Plaintiff sues these Defendants under fictitious names pursuant to Code of Civil Procedure § 474. Plaintiff is informed and believes and thereon alleges that each Defendant named in this complaint is in some manner responsible for the wrongs and damages as alleged below, and in so acting was functioning, at least at times, as the agent, servant, partner, and/or employee of the Defendants, and in doing and/or not doing the actions mentioned below was acting within the course and scope of his or her authority as such agent, servant, partner, and/or employee with the permission and consent of the other Defendants.

## IV. FACTS COMMON TO ALL CAUSES OF ACTION

### A. Plaintiff's Relationship to Defendants

11. Plaintiff's residential telephone number is 650 948-1790. The residential telephone directory lists the number under the name G. Roylance.

12. Plaintiff did not have a business relationship with any Defendant prior to the prerecorded call.

13. Plaintiff has not given any Defendant prior permission or prior express consent to transmit prerecorded messages to his telephone, 650 948-1790.

14. If Plaintiff did have a business relationship with any Defendant or had expressed consent for prerecorded calls, that relationship or consent was terminated by do-not-call requests.

### B. The Business

15. On information and belief, the Defendants provide mortgage services.

16. Defendants use telemarketing to sell their services.

17. Telemarketing companies are agents of their principals. Telemarketers enter into contracts on behalf of their principal. The telemarketer has bound the principal to a contract. The telemarketer has represented the principal to third persons.

18. Principals are responsible for the business torts of their telemarketers.

19. Principals have a nondelegable duty to obey telemarketing statutes.

### C. Prerecorded Call to Plaintiff on 28 May 2010

20. On 28 May 2010, plaintiff received an anonymous prerecorded message on his residential

Complaint for Damages and Injunctive Relief

telephone line (the "first call").

21. The prerecorded message did not provide any company name. The FCC requires "All artificial or prerecorded telephone messages shall: (1) At the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call. If a business is responsible for initiating the call, the name under which the entity is registered to conduct business with the State Corporation Commission (or comparable regulatory authority) must be stated". (47 C.F.R. § 64.1200(b).)

22. The prerecorded message did not include a telephone number or a street address: "During or after the message, state clearly the telephone number (other than that of the autodialer or prerecorded message player that placed the call) of such business, other entity, or individual." (47 C.F.R. § 64.1200(b)(2).)

23. The Caller Id information for the prerecorded call was "Private caller" (blocked) without a telephone number. The FCC requires that all telemarketing calls provide Caller Id. The number supplied must be suitable for placing do-not-call requests.

24. A live person did not identify the company, introduce the prerecorded message, or ask permission to play the recording.

25. The prerecorded message announced a "thirty-year loan at an incredible interest rate of four point five percent." It also mentioned skipping two payments.

26. The prerecorded message was an unsolicited advertisement. It was part of an overall plan or marketing campaign to sell property, goods, or services.

27. Unsolicited prerecorded calls are illegal under both state and federal law. The caller apparently knew that prerecorded calls were illegal; in an effort to frustrate complaints, the caller did not supply the name of the caller or the entity on whose behalf the call was made. The message did not supply a telephone number. The call suppressed Caller ID.

28. Legitimate advertisers want the public to know their name and how to contact them.

29. The prerecorded message stated, "If you'd like more information about this program, press one on your phone right now." Plaintiff wanted to identify the anonymous caller, so he pressed one. Instead of being told more information about the program, an automated message stated, "At the tone, state your name, your telephone number, and a convenient time to reach you there, and we'll be back in touch.." In order to identify the caller, plaintiff left his name and number – the only option for further information at that point.

30. A short time later, "Mark" called plaintiff back about the loan. This call also blocked Caller Id. In order to get identity information, plaintiff discussed refinancing a mortgage. After that discussion, Mark said he was MARK AUGUSTUS. He gave a telephone number of 1-800-935-5914. He would mail some preliminary papers.

31. MARK AUGUSTUS called again on 1 June 2010 seeking more information. He said he would mail the papers that day. This call also blocked Caller Id.

32. The papers arrived 2 June 2010 via OnTrac. The address for MARK AUGUSTUS was given as 10642 Santa Monica Blvd. Suite 205, Los Angeles, CA 90025. The papers identified AMERIFUND LENDING GROUP, 31225 La Baya Drive Suite 211, Thousand Oaks, CA 91362, 1-800-935-5914. The broker's representative was listed as DONECIA MONTGOMERY (DRE license 01236597). A heading for many of the pages was "Amerifund Lending Group, LIC# 01258835 | Originator: Donecia Montgomery, LIC# 01236597". The papers were to be returned to AMERIFUND LENDING, 10642 Santa Monica Blvd. Suite 205, Los Angeles, CA 90025 via OnTrac. The refinance was at an interest rate of 4.5 percent for 30 years. The papers gave the same telephone number for both MARK AUGUSTUS and DONECIA MONTGOMERY.

### D. Demand letters

33. Plaintiff sent demand letters via certified mail return receipt requested on 3 June 2010. One letter went to MARK FLEISCHMANN at the La Baya Drive address; the green card was signed 7 June 2010. Another letter went to MARK AUGUSTUS at the Santa Monica Blvd address; the green card was signed 7 June 2010.

34. The demand letter described the events surrounding the solicitation. The demand letter requested that plaintiff's telephone number be placed on the do-not-call list. The letter demanded a written copy of the company's do-not-call policies and warned that failure to provide the copy risked $1500 in statutory damages. The letter demanded proof of an established business relationship with plaintiff. The letter demanded proof of prior express consent to place prerecorded calls. The letter demanded the identity of any organization making calls on the company's behalf.

35. There was no response to the demand letters.

36. No remedy was offered to plaintiff.

### E. Five subsequent prerecorded calls

37. On 1 October 2010, plaintiff's answering machine received the tail end of an identical

5

Complaint for Damages and Injunctive Relief

anonymous prerecorded call. Caller ID was blocked.

38. On 22 October 2010, plaintiff answered another identical anonymous prerecorded call. Caller ID was blocked. In order to identify the caller, plaintiff pressed a key and left a message with his name and number. Plaintiff did not receive an identifiable callback during the following week.

39. On 3 November 2010 around 11:24AM, plaintiff's answering machine received the tail end of an identical anonymous prerecorded call. Caller ID was blocked.

40. On 3 November 2010 around 4:11PM, plaintiff's answering machine received the tail end of an identical anonymous prerecorded call. Caller ID was blocked.

41. On 28 November 2010, plaintiff's answering machine received the tail end of an identical anonymous prerecorded call. Caller ID was blocked.

### F. Conduct

42. Defendants' conduct is despicable.

43. Defendants' conduct meets the definition of "malice" under California Civil Code § 3294. Defendants knew that prerecorded telephone solicitations without prior consent were injuries to the recipient. Despite notice and knowledge, Defendants willfully and consciously disregarded the rights of others.

44. Defendants' conduct meets the definition of "oppression" under California Civil Code § 3294. Defendants consciously disregarded the telemarketing laws and subjected persons to interruptions from their daily lives to answer telephone calls that should never have been made.

45. Defendants' conduct meets the definition of "fraud" under California Civil Code § 3294. Defendants intentionally concealed their identity. Honest advertisers want consumers to know their name; they do not hide their identity or block Caller ID. Suppressing an advertiser's identify makes it difficult for consumers to exercise their legal rights. Defendants did not provide company names or telephone numbers making it difficult to identify the caller and prosecute.

## V. FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS

### Violation of the Telephone Consumer Protection Act (TCPA. 47 U.S.C. § 227(b))

46. Plaintiff realleges and incorporates the allegations of paragraphs 1 through 45 as though fully set forth herein.

47. Congress passed the Telephone Consumer Protection Act (TCPA, 47 U.S.C. § 227(b)) to

Complaint for Damages and Injunctive Relief

protect consumers from certain automated calls. For example, Congress prohibited advertisers from using prerecorded telephone messages for unsolicited advertisements without the subscriber's prior express consent. (47 U.S.C. § 227(b).)

48. Congress granted a private right of action ("PROA") to consumers at 47 U.S.C. § 227(b)(3). Violations of the subsection and its FCC regulations are actionable under the TCPA. (47 U.S.C. § 227(b)(3)(A).)

49. The six anonymous prerecorded calls, violated 47 U.S.C. § 227(b)(1)(B). They were unsolicited advertisements transmitted without prior express consent.

50. Defendants' history shows they knew prerecorded solicitations were illegal, and the calls suppressed identification information, so the violations are "knowing" or "willful" in the language of the TCPA.

51. Defendants are guilty of oppression, fraud, and/or malice as defined by Civil Code § 3294. Despite continued notices from the FCC and other government entities, Defendants continued to violate telemarketing laws and consciously ignore the rights of residential telephone subscribers.

## VI.  SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS

### Violation of the Telephone Consumer Protection Act (TCPA. 47 U.S.C. § 227(c))

52. Plaintiff realleges and incorporates the allegations of paragraphs 1 through 45 as though fully set forth herein.

53. Congress wrote 47 U.S.C. § 227(c) for the "Protection of subscriber privacy rights". Congress told the FCC to write regulations "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." (47 U.S.C. § 227(c).) Consumers object to receiving calls that do not identify the caller, do not provide caller ID, or do not follow do-not-call procedures. Violations of the FCC regulations are actionable under the TCPA. (47 U.S.C. § 227(c)(5)(A).)

54. Congress made the advertiser responsible for the actions of its telemarketers ("by or on behalf of"; see 47 USC § 227(c)).

55. Many of the FCC's subsection 227(c) regulations are found at 47 C.F.R. § 64.1200(c) [2007], 47 C.F.R. § 64.1200(d) [2007], and 47 C.F.R. § 64.1601(e).

56. 47 C.F.R. § 64.1200(d) applies to any person or entity initiating "any call for telemarketing purposes to a residential telephone subscriber". The term "telemarketing" is defined at 47 C.F.R. §

Complaint for Damages and Injunctive Relief

64.1200(f)(10) [2007] states "The term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."

### 1. Identification

57. 47 C.F.R. § 64.1200(d)(4) [2007] states, *"Identification of sellers and telemarketers.* A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

58. The six prerecorded calls did not provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call was made, or a telephone number or address at which the person may be contacted. The calls were to encourage the sale of mortgage services. It did not provide any company name or telephone number.

### 2. Written do-not-call policy

59. 47 C.F.R. § 64.1200(d)(1) [2007] states, *"Written policy.* Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list."

60. In the demand letter, plaintiff demanded a written copy of a do-not-call policy but did not receive one.

### 3. Do-not-call request

61. 47 C.F.R. § 64.1200(d)(6) [2007] states, *"Maintenance of do-not-call lists.* A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made."

62. In the demand letter, plaintiff made a do-not-call request. The five subsequent prerecorded calls did not honor that request.

### 4. Caller ID

63. 47 C.F.R. § 64.1601(e) [2003] states, "Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(7) must transmit caller identification information." "The telephone number so provided must permit any individual to make a do-not-call request during regular business

Complaint for Damages and Injunctive Relief

hours."

64. The six prerecorded calls did not supply a valid telephone number for its Caller ID information.

65. The two live calls by MARK AUGUSTUS did not supply a valid telephone number for its Caller ID information.

5. Standing

66. The subsection (c) private right of action has a standing requirement. Plaintiff has received more than one call in violation of subsection (c) within 12 months.

67. Defendants knew prerecorded solicitations were illegal, so the violations are "knowing" or "willful" in the language of the TCPA.

68. Defendants are guilty of oppression, fraud, and/or malice as defined by Civil Code § 3294. Despite continued notices from the FCC and other government entities, Defendants continued to violate telemarketing laws and consciously ignore the rights of residential telephone subscribers.

## VII. THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS

### Unfair Business Practices (Business & Professions Code §§ 17200 et seq.)

69. Plaintiff realleges and incorporates the allegations of paragraphs 1 through 45 as though fully set forth herein.

70. Plaintiff has been injured in fact by defendants' unfair business practices. Plaintiff received an illegal prerecorded call. Furthermore, plaintiff has lost money or property as a result of those practices. Plaintiff has lost money by sending a certified letter required by the CLRA; plaintiff never received a written copy of a do-not-call policy. Plaintiff has standing under Business & Professions Code § 17204.

71. Defendants' telemarketing practices violate the TCPA.

72. Defendants' marketing practices violate the CLRA.

73. Defendants' marketing practices violate the California Unfair Advertising Practices Act.

74. Defendants' telemarketing practices violate Pubic Utilities Code § 2871 et seq.

75. Telemarketers must provide valid Caller ID information.

## VIII. FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### Unfair Advertising Practices (Business & Professions Code §§ 17500 et seq.)

76. Plaintiff realleges and incorporates the allegations of paragraphs 1 through 45 as though fully

Complaint for Damages and Injunctive Relief

set forth herein.

77. Plaintiff has been injured in fact by defendants' unfair business practices. Plaintiff received an illegal prerecorded call. Furthermore, plaintiff has lost money or property as a result of those practices. Plaintiff has lost money by sending a certified letter required by the CLRA; plaintiff never received a written copy of a do-not-call policy. Plaintiff has standing under Business & Professions Code § 17535.

78. Defendants' telemarketing practices violate Business & Professions Code § 17500.3. A caller must immediately identify who they are and state the true purpose of the call. The caller did not adequately identify. A caller must state who they are. A caller must state who he represents. A caller must state the kinds of goods or services being offered for sale. A caller may not use any plan, scheme, or ruse to misrepresent his true status or mission.

79. The identity information in the prerecorded message did not provide an actual company name, a telephone number, or an address.

## IX. PRAYER FOR RELIEF

### A. For the First and Second Causes of Action (TCPA)

Plaintiff prays for injunctive relief.

Plaintiff prays for at least $500 in statutory damages for each violation of the TCPA or its regulations. Plaintiff prays that each violation be trebled because it was willful or knowing as defined in the TCPA. Willful or knowing under the TCPA merely requires an intentional act; it does require knowledge that the intentional act was illegal.

Plaintiff claims there were six prerecorded calls in violation of subsection (b), so subsection (b) statutory damages should be at least $9,000.

Plaintiff claims there eight calls in violation of subsection (c); in addition, a do-not-call policy was not provided, so statutory damages should be at least $13,500.

Plaintiff prays for exemplary damages according to proof. In the case of a default, plaintiff reserves $96,000 (six prerecorded calls at $16,000 each) in exemplary damages.

Under a *BMW v Gore* guideline, first strike punitive damages may be similar to penalties levied by government agencies. The FCC is authorized to impose $16,000 for each violation of the TCPA. In that case, reasonable exemplary damages for six prerecorded calls would be $96,000. This case is not a first strike situation: the Defendants were notified by certified mail after the first call, but the calls

Complaint for Damages and Injunctive Relief

persisted.

*United Artists Theatre Circuit v. F. C. C.*, 147 F.Supp.2d 965, shows that only one subscriber in 90,000 bothered to sue under the TCPA telemarketing rules when the identity of the telemarketer was known. If lawsuits are rare, then some companies (or their telemarketers) may risk such lawsuits believing the financial liability is small. For example, paying one $1,500 judgment every 90,000 calls is an average cost of 1.6 cents per call. The rare lawsuit would be a small cost of doing business.

If a telemarketer used the required live operators to introduce the call, then each call would incur labor costs for the introduction. If the operators got $18 per hour and the introductions took one minute (about 150 words), then each call requires $0.30 of labor. In 90,000 calls, the telemarketer would save $27,000 worth of labor costs. Paying a $1500 judgment is less than one-tenth the cost of the labor savings.

Punitive damages should be set to make illegal telemarketing practices uneconomic. The penalty, when averaged over 90,000 calls, should be more than the economic savings of illegal automated telemarketing.

Furthermore, illegal telemarketers can frustrate TCPA suits by hiding their identity. Not identifying the call in the prerecorded message and blocking Caller Id means the recipient does not know who called and therefore whom to sue. Consequently, lawsuits would be much rarer than 1 in 90,000.

### B. For the Third Cause of Action (Unfair Business Practices)

Plaintiff prays for injunctive relief.

### C. For the Fourth Cause of Action (Unfair Advertising)

Plaintiff prays for injunctive relief.

### D. Further Prayer

Court costs, costs of action, and attorney's fees.

Plaintiff prays for any other relief that the court deems proper.

Complaint for Damages and Injunctive Relief

## X. JURY DEMAND

A jury trial is requested.

Dated May 27, 2014

*Gerald Roylance*
Gerald Roylance