UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| GERALD ROYLANCE, | ) | Case No. 5:14-cv-02445-PSG |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **THAT PLAINTIFF'S MOTION FOR** |
| v. | ) | **DEFAULT JUDGMENT BE** |
| | ) | **GRANTED-IN-PART** |
| ALG REAL ESTATE SERVICES, INC. d/b/a | ) | |
| AMERIFUND LENDING GROUP, MARK | ) | **(Re: Docket No. 14)** |
| AUGUSTUS, DONECIA LA SHAUN | ) | |
| AUGUSTUS and DOES 1-200, | ) | |
| | ) | |
| Defendants. | | |

Approximately five years ago, Plaintiff Gerald Roylance received the first of multiple unwanted telephone calls offering him a home mortgage at a supposedly "incredible" rate.[1]  The calls came at the direction of Defendants ALG Real Estate Services, Inc., Mark Augustus and Donecia La Shaun Augustus.[2]  Not satisfied with the Defendants' response—or lack thereof— Roylance filed this suit, alleging that Defendants' actions violated the Telephone Consumer

---

[1] *See* Docket No. 1 at ¶¶ 25, 37-41.

[2] *See id.* at 2, 6-10.  Roylance alleges that the California Department of Real Estate states that ALG Real Estate Services, Inc. does business as Amerifund Lending Group. *See* Docket No. 1 at ¶ 6; Docket No. 14 (Roylance Decl.) at ¶ 2.  The court will refer to this defendant as ALG.  Roylance also alleges that Donecia La Shaun Augustus has a broker's license from the California Department of Real Estate that lists a former name of Donecia La Shaun Montgomery. *See* Docket No. 1 at ¶ 8. The court will refer to this defendant as Donecia Augustus.

Case No.: 5:14-cv-02445-PSG
REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT BE GRANTED-IN-PART

Protection Act, California's Unfair Competition Law, California's False Advertising Law and the California Public Utilities Code.

Because Defendants have not appeared, following an entry of default, Roylance now moves for a default judgment.[3]  While the undersigned is persuaded that a default judgment is warranted with respect to at least some of Roylance's claims, Defendants have not consented to magistrate judge jurisdiction pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 72(a).  The court therefore ORDERS reassignment to a district judge, and recommends that default judgment against defendants be granted in part.

## I.

When a party against whom a judgment for affirmative relief is sought "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise," the court may enter default judgment against that party.[4]  The court has "broad latitude to impose the sanction of default" at any point to ensure the "orderly and expeditious conduct of litigation."[5]  "The district court's decision whether to enter a default judgment is a discretionary one."[6]

The factors the court may consider include: (1) the possibility of prejudice to the plaintiff; (2) the substantive merits of plaintiff's claim; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of dispute as to any material facts in the case; (6) whether default resulted from excusable neglect; and (7) the strong policy of the Federal Rules of Civil Procedure favoring decisions on the merits.[7]

---

[3] *See* Docket No. 14.

[4] Fed. R. Civ. P. 55(a)-(b).

[5] *See Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141 (9th Cir. 1989) (internal citation omitted).

[6] *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980).

[7] *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

2

Case No.: 5:14-cv-02445-PSG
REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT BE GRANTED-IN-PART

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1
2
3
4
5
6
7

According to his complaint, Roylance received an anonymous prerecorded message on his residential telephone line in May 2010 from a blocked telephone number.[8]  The message offered a "thirty-year loan at an incredible interest rate of four point five percent."[9]  The message did not state the identity of the caller, provide the caller's telephone number or ask permission to play the message.[10]  Instead, Roylance was invited to "press one" to receive more information about the program.[11]  After Roylance complied in order to identify the caller, the automated message asked him to provide his name and telephone number, which Roylance did.[12]

8
9
10
11
12

Roylance then received a live call about the loan described in the prerecorded call.[13]  The call came from a blocked number, but the person on the phone identified himself as Mark Augustus.[14] After some discussion Mark Augustus told Roylance that he would send Roylance some papers.[15]  He then called Roylance again from a blocked number seeking more information and told Roylance that "he would mail the papers that day."[16]

13
14
15

The next day, Roylance received papers which offered a mortgage at an interest rate of 4.5 percent for thirty years and identified ALG and listed Donecia Augustus under her former name of Donecia Montgomery as the broker's representative.[17]  The papers stated that Roylance should

16
17

[8] *See* Docket No. 1 at ¶¶ 20-25.

[9] *See id.*

18
19
20

[10] *See id.* at ¶¶ 22-25.

[11] *See id.* at ¶ 29.

21

[12] *See id.*

22

[13] *See id.* at ¶ 30.

23
24

[14] *See id.*

[15] *See id.*

25
26

[16] *See id.* at ¶ 31.

[17] *See id.* at ¶ 32.

27
28

3

return them to ALG and listed addresses for ALG and Mark Augustus.[18]  These papers provided the same telephone name for Mark Augustus and Donecia Augustus.[19]

The next day after that Roylance sent letters by certified mail to the addresses listed for ALG and Mark Augustus on the loan papers.[20]  These letters stated that the solicitation was unlawful and asked ALG to place Roylance on and send him a copy of its do-not-call list.[21]  Defendants did not respond to his letters.[22]  Roylance subsequently received five identical anonymous prerecorded calls on his residential telephone line.[23]  All of these calls blocked caller identification.[24]

Roylance then filed this suit, claiming that the defendants violated the Telephone Consumer Protection Act, California's Unfair Competition Law, California's False Advertising Law and the California Public Utilities Code.[25]  A summons was subsequently issued.[26]

After Defendants did not appear or otherwise respond to the suit, Roylance moved for entry of default.[27]  The Clerk entered default as requested.

_____

[18] *See id.*

[19] *See id.*

[20] *See id.* at ¶ 33.

[21] *See id.* at ¶ 34.

[22] *See id.* at ¶ 35.

[23] *See id.* at ¶¶ 37-41.

[24] *See id.*

[25] *See id.* at 6-10.

[26] *See* Docket No. 5.

[27] *See* Docket Nos. 5, 6.

Case No.: 5:14-cv-02445-PSG
REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT BE GRANTED-IN-PART

1

United States District Court
For the Northern District of California

## II.

At issue is whether default judgment should be granted.  Because the *Eitel* factors weigh in favor of default judgment as to some but not all of Roylance's claims, the court recommends that default judgment be granted in part.

**First**, the potential prejudice to Roylance weighs in favor of default judgment. If the court does not grant Roylance's motion for default judgment, Roylance has no alternative recourse.[28]

**Second**, Roylance's complaint sets forth facts sufficient to state causes of action under the TCPA and California Civil Code Section 3294, at least against ALG and Mark Augustus.  "In considering the sufficiency of the complaint and the merits of the plaintiff's substantive claims, facts alleged in the complaint not relating to damages are deemed to be true upon default."[29]

Section 227(b)(1)(B) of the TCPA prohibits the initiation of "any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party," subject to exceptions.  Roylance has standing to assert this claim because Section 277(b)(3)(A)-(B) provides that a person may bring "an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation" or an action "to receive $500 in damages for each such violation."

Roylance has established that the six prerecorded calls he received violated Section 227(b)(1)(B) because these calls were prerecorded, were made to his residential telephone line and advertised mortgages.[30]  Further, as Roylance notes, the fact that he did not answer all of the calls does not take the unanswered calls outside of the scope of the TCPA because Section 227(b)(1)(B)

---

[28] *See PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").

[29] *Bd. of Trustees of Sheet Metal Workers v. Moak*, Case No. 4:11-cv-04620-CW, 2012 WL 5379565, at *2 (N.D. Cal. Oct. 31, 2012) (citing *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); Fed. R. Civ. P. 8(d)).

[30] *See* Docket No. 1 at ¶¶ 20-25, 37-41.

Case No.: 5:14-cv-02445-PSG
REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT BE GRANTED-IN-PART

1   does not require the plaintiff to answer each call.[31]  That he "did not have a business relationship

2   with any [d]efendant prior to the prerecorded call" and had not given defendants prior permission

3   to transmit prerecorded messages to his telephone line shows that Roylance did not give prior

4   express consent to these calls.[32]

5          Calls that are "initiated for emergency purposes" or which the FCC otherwise exempts do

6   not violate Section 227(b)(1)(B).  The FCC may exempt "calls made for commercial purposes" that

7   "will not adversely affect the privacy rights that this section is intended to protect" and "do not

8   include the transmission of any unsolicited advertisement."[33]  The urgency with which one might

9   desire to respond to an offer of a loan at supposedly "incredible" interest rate aside, calls

10  advertising mortgages are clearly not initiated for emergency purposes.[34]  Roylance has alleged

11  facts sufficient to show that the prerecorded calls cannot be within any exemption under Section

12  227(b)(2)(B) because he alleges that the calls transmitted "unsolicited advertisement[s]" for

13  mortgages.

14         Roylance's allegations also establish the six prerecorded calls and two live calls he received

15  violate Section 227(c).  Section 227(c)(5) provides a private right of action for a "person who has

16  received more than one telephone call within any 12-month period by or on behalf of the same

17  entity in violation of the regulations prescribed under this subsection."  Roylance has standing to

18  pursue a claim under Section 227(c) because he alleges that he had received eight calls in violation

19  of Section 227(c) within a twelve month period by on or behalf of the same entity.[35]

---

[31] *See* Docket No. 14 at 2.

[32] *See* Docket No. 1 at ¶¶ 12-13.

[33] *See* 47 U.S.C. § 227(b)(2)(B)(ii)(I)-(II).  The FCC exempts calls that are made for "commercial purpose[s] but do[] not include or introduce an advertisement or constitute telemarketing." *See* 47 C.F.R. § 64.1200(a)(3)(iii).

[34] *See* Docket No. 1 at ¶ 25.

[35] *See* Docket No. 1 at ¶¶ 20, 30-31, 37-41.

Case No.: 5:14-cv-02445-PSG
REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT BE GRANTED-IN-PART

1   Roylance alleges facts sufficient to establish that the identified caller and Mark Augustus

2   was subject to but did not comply with several FCC regulations.  Roylance alleges that the calls he

3   received violated the do-not-call procedures set forth in 47 C.F.R. Section 64.1200(d).[36] These

4   procedures apply to any person or entity initiating "any call for telemarketing purposes to a

5   residential telephone subscriber."[37]  The term "telemarketing" is defined as "the initiation of a

6   telephone call or message for the purpose of encouraging the purchase or rental of, or investment

7   in, property, goods or services which is transmitted to any person."[38]  Roylance's allegation that the

8   calls he received made to "encourage the sale of mortgage[s]" is sufficient to show that that Section

9   64.1200(d) applies to these calls.[39]

10   Roylance also sufficiently alleges the prerecorded calls violated the FCC regulation which

11   requires that a "person or entity making a call for telemarketing purposes must provide the called

12   party with the name of the individual caller, the name of the person or entity on whose behalf the

13   call is being made and a telephone number or address at which the person or entity may be

14   contacted."[40]  Roylance alleges that the six prerecorded calls violated this regulation because none

15   of these calls identified the caller or provided a telephone or address at which the caller could be

16   contacted.[41]  Further, as Roylance notes, the fact that the prerecorded call offered Roylance the

17   option to find out more about the offer by "pressing 1" is not sufficient identification.[42]  Even if

18   this option is deemed to provide a telephone number, the telephone number provided is merely for

19

20   [36] *See id.* at 7-8.

21   [37] *See* 47 C.F.R. § 64.1200(d).

22   [38] 47 U.S.C. § 64.1200(f)(12).

23   [39] *See* Docket No. 1 at ¶¶ 25, 30-31, 37-41, 58.

24   [40] 47 C.F.R. § 64.1200(d)(4).

25   [41] *See* Docket No. 1 at ¶ 58.

26   [42] *See* Docket No. 14 at 3; *see also* Docket No. 1 at ¶ 29.

27   7

28   Case No.: 5:14-cv-02445-PSG
REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT BE GRANTED-IN-PART

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  the prerecorded message player that placed the call, not for "the person or entity on whose behalf

2  the call is being made."[43]

3         Roylance's allegations also establish that ALG and Mark Augustus violated the

4  requirement that "[p]ersons or entities making calls for telemarketing purposes must have a written

5  policy, available upon demand, for maintaining a do-not-call list."[44]  As stated above, Roylance

6  alleges that Mark Augustus and ALG did not respond to the letters Roylance sent asking them to

7  provide him with a copy of ALG's do-not-call policy.[45]

8         The five subsequent calls Roylance received after he requested that Defendants place him

9  on their do-not-call listed also violated the FCC's regulation that telemarketers must "maintain a

10  record of a consumer's request not to receive further telephone telemarketing calls" and honor

11  these consumer requests for five years from the time the request is made.[46]  A residential

12  subscriber's do-not-call request applies to entities that are affiliated with particular business entity

13  on whose behalf a call is made if "the consumer reasonably would expect them to be included

14  given the identification of the caller and the product being advertised."[47]

15         Roylance alleges that he received these five prerecorded calls less than a year after he

16  requested that ALG and Mark Augustus place him on their do-not-call list.[48]  Although the

17  subsequent calls were anonymous, as Roylance notes, the fact that they were "identical" to the first

18  call establishes that "the person with the identical message" is "the same caller."[49]  These

---

[43] *See* 47 C.F.R. § 64.1200(d)(4).

[44] *See* 47 C.F.R. § 64.1200(d)(1).

[45] *See* Docket No. 1 at ¶¶ 33-36.

[46] *See* 47 C.F.R. § 64.1200(d)(6).

[47] *See* 47 C.F.R. § 64.1200(d)(5).

[48] *See* Docket No. 1 at ¶¶ 33, 37-41.

[49] *See* Docket No. 14 at 3.

8

subsequent prerecorded calls thus violated Section 64.1200(d)(6) because Roylance could reasonably believe that his do-not call request to Mark Augustus and ALG would "stop all anonymous prerecorded calls about mortgages."[50]

All six prerecorded calls and the two live calls Roylance received also violated the FCC's requirement that "[a]ny person or entity that engages in telemarketing…must transmit caller identification information" and "is prohibited from blocking the transmission of caller identification information."[51] "The telephone number so provided must permit any individual to make a do-not-call request during regular business hours."[52] Roylance alleges that the six prerecorded calls and two live calls blocked the identity of the caller.[53]

Roylance also has alleged facts sufficient to show that ALG is vicariously liable for the conduct described above. Section 227(b)(1)(B) imposes liability on "any person" who "initiate[s] any telephone call" and Section 227(c)(5) provides a private right of action to a person who has received one or more telephone calls "by or on behalf of the same entity." Because Roylance alleges that all the prerecorded calls were anonymous and that all calls blocked caller identification,[54] Roylance's allegations do not definitively establish that ALG itself made these calls. However, the Ninth Circuit holds that imposition under the TCPA of "vicarious liability where an agency relationship, as defined by federal common law, is established between the defendant and a third-party caller" is "consistent" with the FCC's interpretation of the TCPA.[55] The FCC has "repeatedly acknowledged the existence of vicarious liability under the TCPA" and

_____

[50] *See id.*

[51] *See* 47 C.F.R. § 64.1601(e).

[52] *See* 47 C.F.R. § 64.1601(e)(1).

[53] *See* Docket No. 1 at ¶¶ 23, 30-31, 37-41.

[54] *See* Docket No. 1 at ¶¶ 20, 23, 30-31, 37-41.

[55] *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871,877-78 (9th Cir. 2014).

Case No.: 5:14-cv-02445-PSG
REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED-IN-PART

1    "has clarified that vicarious liability is imposed 'under federal common law principles of agency

2    for violations of either Section 227(b) or (c) that are committed by third-party telemarketers.'"[56]

3       Vicarious liability is appropriate when the plaintiff can demonstrate that a defendant

4    "controlled or had the right to control [the entity that committed the TCPA violation], and more

5    specifically, the manner and means of the [telemarketing campaign] it conducted."[57]  The "FCC

6    observed in its declaratory ruling…that it does 'not believe it is appropriate to limit vicarious

7    liability to the circumstances of classical agency (involving actual seller, or right to control, of the

8    telemarketing call)…Principles of apparent authority and ratification may also provide a basis for

9    vicarious seller liability for violations of section 227(b).'"[58]  Apparent authority "can only 'be

10   established by proof of something said or done by the [alleged principal], on which [the plaintiff]

11   reasonably relied.'"[59]

12      ALG is vicariously liable for the unlawful conduct described above because Roylance's

13   allegations establish that ALG gave the unidentified caller who made the prerecorded calls and

14   Mark Augustus apparent authority to conduct telemarketing on its behalf.[60]  Roylance's conclusory

15   allegations that the defendants "use telemarketing to sell their services" and that "telemarketing

16   companies are agents of their principles" are not sufficient to establish that ALG is vicariously

---

17
18   [56] *See id.* at 878 (citing *In re Joint Petition Filed by Dish Network, LCC*, 28 FCC. Rcd. 6574, 6574 (2013)).

19
20   [57] *See Thomas v. Taco Bell Corp.*, 582 Fed. Appx. 678, 679 (9th Cir. 2014) (citing *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012) (citing *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010))).

21
22   [58] *See id.* (citing 28 F.C.C. Rcd. at 6590 n. 124).

23
24   [59] *See id.* (citing *NLRB v. Dist. Council of Iron Workers of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997); Restatement (Second) of Agency § 265 cmt. *a* (1958) ("Apparent authority exists only as to those to whom the principal has manifested that an agent is authorized.  There is, therefore, tort liability only if such a manifestation and its execution by the apparent agent results in harm." (internal citations omitted)).

25
26   [60] As Roylance notes, the allegedly "identical" nature of all six rerecorded calls establishes that the
27   same entity made all of these calls. *See* Docket No. 1 at ¶¶ 37-41; *see also* Docket No. 14 at 3.

28
     Case No.: 5:14-cv-02445-PSG
     REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT
     JUDGMENT BE GRANTED-IN-PART

United States District Court
For the Northern District of California

liable for telemarketer's conduct.[61]  However, Roylance also alleges that Amerifund Lending Group, a name under which ALG does business, was identified on the papers included in the loan package and that the "papers were to be returned to Amerifund Lending."[62]  In his declaration in support of his motion for default judgment, Roylance further alleges that the shipper of the loan package that he received was Amerifund Lending.[63]  Roylance alleges that this loan package offered a refinance at a rate of 4.5 percent for thirty years, the same rate and time period as the mortgage the prerecorded call offered.[64]

By shipping a loan package to Roylance regarding same mortgage that the prerecorded caller and Mark Augustus offered to Roylance, ALG thus represented to Roylance that Mark Augustus and the unidentified caller had the authority to advertise mortgages for ALG.  Roylance then reasonably relied on this representation to his detriment because he spent money to send letters by certified mail to Mark Augustus and to ALG asking to be placed on their do-not-call lists.[65]

Likewise, Roylance has established that Mark Augustus is liable for the conduct described above.  Roylance's allegation that Mark Augustus called Roylance twice is sufficient to establish that Mark Augustus is directly liable for those calls because he made those calls himself.[66]  Mark Augustus also called Roylance to follow up on the first prerecorded call that Roylance received and told Roylance that he would mail Roylance loan papers regarding the mortgage.[67]  Like ALG,

---

[61] *See* Docket No. 1 at ¶¶ 17-19.

[62] *See* Docket No. 1 at ¶ 32.

[63] *See* Docket No. 14 (Roylance Decl.) at ¶ 126.

[64] *See* Docket No. 1 at ¶¶ 25, 32.

[65] *See* Docket No. 1 at ¶ 33.

[66] *See* Docket No. 1 at ¶¶ 30-31.

[67] *See id.* at ¶¶ 30-32.

Case No.: 5:14-cv-02445-PSG
REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT BE GRANTED-IN-PART

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  Mark Augustus represented to Roylance that the unidentified caller had authority to conduct

2  telemarketing on his behalf.  As stated above, Roylance relied on these representations to his

3  detriment because Roylance tried to stop the unidentified caller from calling him again by spending

4  money to send a letter to Mark Augustus.[68]

5          Roylance's allegations do not, however, establish that Donecia Augustus is personally

6  liable under the TCPA.  Direct liability is not proper here because Roylance does not allege that

7  Donecia Augustus made the calls herself or allege facts sufficient to show that she had the calls

8  made on her behalf.  Roylance also does not establish that Donecia Augustus is vicariously liable

9  for the prerecorded and live calls he received because Roylance does not allege facts that show that

10  Donecia Augustus took actions that cloaked the unidentified caller, ALG or Mark Augustus with

11  apparent authority to act on her behalf.[69]  In particular, Roylance alleges that Donecia Augustus'

12  former name Donecia Montgomery appeared as the "broker's representative" and "originator" on

13  the loan papers that he received, but Roylance does not claim that Donecia Augustus made any of

14  the live or prerecorded calls or sent those loan papers to him.[70]

15          Although the inclusion of her name suggests that Donecia Augustus was involved in the

16  mailing of the papers to Roylance, Roylance's allegations leave open the possibility that Mark

17  Augustus or someone else listed her name on the papers without her consent or knowledge.

18  Likewise, the fact that the papers listed the same telephone number for both Mark and Donecia

19  Augustus does not show that Donecia Augustus give permission for her name to be listed on these

20  papers.[71]  As a result, Roylance's allegations are not sufficient to establish that Donecia Augustus

21  is vicariously liable for Mark Augustus, ALG or the unidentified caller's conduct because

22

23  [68] *See id.* at ¶ 33.

24  [69] *See Thomas*, 582 Fed. Appx. at 679-80.

25  [70] *See* Docket No. 1 at ¶¶ 8, 32.

26  [71] *See id.* at ¶ 32.

27

28

Case No.: 5:14-cv-02445-PSG
REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT BE GRANTED-IN-PART

1    Roylance does not allege that Donecia Augustus has "said or done" something to give these entities

2    apparent authority to act on her behalf.[72]

3        Roylance also has not established that Donecia Augustus should be held liable under the

4    TCPA based on her alleged status as an employee of ALG.  Roylance alleges that the California

5    Department of Real Estate listed Donecia Augustus as a "salesperson" under the name Donecia La

6    Shaun Montgomery for whom ALG was "the employing broker" in June 2010, around the same

7    time that Roylance received the first prerecorded call and the calls from Mark Augustus.[73]

8    Roylance therefore has established that Donecia Augustus was an employee of ALG at the time the

9    first prerecorded call was made.

10        However, Donecia Augustus' employment status does not establish that she is liable for

11   ALG's acts because "[a]s a general rule of agency law, the personal liability of a corporate director

12   or officer must be 'founded upon specific acts by the individual director or officer.'"[74]  "Although

13   the Ninth Circuit has not ruled on this issue, numerous district courts have held that corporate

14   actors may be held individually liable for violating the TCPA where they had direct, personal

15   participation in or personally authorized the conduct found to have violated the statute."[75]  In

16

17   [72] *See Thomas*, 582 Fed. Appx. at 679.

18   [73] *See* Docket No. 1 at ¶¶ 8, 20, 30-31.  Roylance also alleges that the National Mortgage Licensing
19   System and Registry states that Amerifund employed Donecia Augustus from May 2008 to July
     2010. *See* Docket No. 14 (Roylance Decl.) at ¶ 42 and Ex. B.  Roylance acknowledges that because
20   this NMLS report "suggests that [Donecia Augustus'] representation of ALG" ended after "the first
     prerecorded call but before the subsequent five prerecorded calls" the "individuals and ALG may
21   have gone their separate ways after the first call." *See* Docket No. 14 at 9.  However, as Roylance
     notes, ALG has not appeared in this case and thus "has not raised that defense." *See id.*  Further, as
22   stated above, ALG is vicariously liable for these five subsequent calls because it gave the
     unidentified caller apparent authority to act on its behalf.  Accordingly, the possibility that Donecia
23   Augustus and ALG may not have had a connection at the time that Roylance received the five
     subsequent prerecorded calls does not negate ALG's liability for those calls.
24
25   [74] *See Ott v. Mortgage Investors Corp. of Ohio, Inc.*, Case No. 3:14-cv-00645-ST, 2014 WL
     6851964, at *9 (D. Or. Dec. 3, 2014) (citing *United States v. Reis*, 366 Fed. Appx. 781, 782 (9th
26   Cir. 2010)).
27   [75] *See id* (internal citations omitted).
28
                                        13
     Case No.: 5:14-cv-02445-PSG
     REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT
     JUDGMENT BE GRANTED-IN-PART

United States District Court
For the Northern District of California

contrast, "courts have declined to find personal liability [when] there has been little evidence of the corporate officer's direct participation in the wrongdoing."[76]

Roylance has not established that Donecia Augustus had "direct, personal participation" in the unlawful conduct.[77]  Courts have generally imposed liability upon individual defendants based upon their status as employees of an entity that committed TCPA violations when those defendants had significant authority over the corporation that committed the TCPA violations.  For instance, individual defendants were held personally liable when they were "the only corporate officers" of the corporation and "set company policies and oversee day-to-day operations" and thus "were clearly involved in the business practices that led" to the unlawful conduct.[78]  Likewise, in *Texas v. American Blastfax*, the court held individual defendants liable when they "controlled all of [the corporation's] day-to-day operations" and thus "were the 'guiding spirits'" and the "'central figures' behind the TCPA violations."[79]

In contrast, Roylance does not allege facts here that establish that Donecia Augustus had the ability to direct the "day-to-day" operations of ALG or any entity that conducted telemarketing on its behalf.  Roylance alleges that the California Department of Real Estate website shows that ALG is a California corporation with 268 branches and 93 salespersons.[80]  The inclusion of Donecia Augustus' former name as a broker's representative on the loan package Roylance received and her alleged status as a "salesperson" for ALG do not establish that Donecia Augustus has the authority to control the telemarketing activities or daily operations of a corporation of this

---

[76] *See id.* (internal citation omitted).

[77] *See id.*

[78] *See Covington & Burling v. Int'l Mktg. & Research, Inc.*, Case No. CIV.A-01-0004360, 2003 WL 21384825, at *6 (D.C. Super. Ct. Apr. 17, 2003).

[79] *See Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892, 898 (W.D. Tex. 2001).

[80] *See* Docket No. 14 (Roylance Decl.) at ¶ 2.

14

Case No.: 5:14-cv-02445-PSG
REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT BE GRANTED-IN-PART

United States District Court
For the Northern District of California

1  size or any telemarketer with whom it was associated.[81]  Roylance's allegations thus do not

2  establish that Donecia Augustus was a "central figure" or "guiding force" but rather at most show

3  only that Donecia Augustus was "tangentially involved" in the unlawful conduct.[82]

4        In addition to stating facts sufficient to support his TCPA claims, Roylance's allegations

5  state a claim that Mark Augustus but not Donecia Montgomery is liable under the California's

6  False Advertising Law.[83]  California Bus. & Prof. Code § 17500.3 makes it "unlawful for any

7  person to solicit a sale or order for sale of goods or services at the residence of a prospective

8  buyer…by means of telephone" without "[s]tating the identity of the person making the

9  solicitation."  To establish standing under the False Advertising Law, "a plaintiff must have

10  'suffered injury in fact' and 'lost money or property' as a result of the defendant's challenged

11  conduct."[84]

12        Roylance has standing to pursue this claim because he alleges that his receipt of an illegal

13  prerecorded call injured him and because he lost money when he sent defendants a certified letter

14  asking to be placed on their do-not-call list.[85]  Further, Roylance has alleged that "the prerecorded

15  message did not provide an actual company name, a telephone number or an address."[86]  As noted

16  above, Mark Augustus is vicariously liable for these calls because he gave the unidentified caller

---

[81] *See* Docket No. 1 at ¶¶ 8, 32.

[82] *See American Blastfax*, 164 F.Supp.2d at 898.

[83] Roylance's complaint also claims that all defendants violated California's Unfair Competition Law and that ALG violated California's False Advertising Law. *See* Docket No. 1 at 9-10. Because Roylance does not seek default judgment based upon his ULC claim or damages or an injunction based upon ALG's alleged violation of California's False Advertising Law, the court deems these claims abandoned. *See* Docket No. 14.

[84] *See Hall v. Diamond Foods, Inc.*, Case No. C-14-2158-MMC, 2014 WL 5364122, at *1 (N.D. Cal. Oct. 21, 2014) (citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103-4 (9th Cir. 2013) (citing Cal. Bus. & Prof. Code §17535))).

[85] *See* Docket No. 1 at ¶ 77.

[86] *See id.* at ¶ 79.

Case No.: 5:14-cv-02445-PSG
REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT BE GRANTED-IN-PART

United States District Court
For the Northern District of California

apparent authority to make the calls on his behalf.  These facts are thus sufficient to state a claim that Mark Augustus is liable under Section 17500.3.  In contrast, because Roylance has not alleged facts that establish that Donecia Augustus is responsible for the unidentified caller's actions, Roylance has not stated a claim against Donecia Augustus under Section 17500.3.

Likewise, Roylance has not alleged facts sufficient to support a claim under the California Public Utilities Code.  Roylance's complaint does not state which sections of this code defendants allegedly violated, but in his motion for default judgment Roylance seeks to enjoin Mark and Donecia Augustus from violating Sections 2871-2876 of the California Public Utilities Code.[87] These sections prohibit certain conduct with respect to the use of "automatic dialing-announcing devices,"[88] which is defined as "any automatic equipment" which stores telephone numbers to be called or can generate such numbers and has the ability "to disseminate a prerecorded message to the telephone number called."[89]  Roylance alleges that he received prerecorded messages on his telephone line, but he does not claim that defendants used an "automatic dialing-announcing device" to make such messages.[90]  Accordingly, Roylance has not alleged facts sufficient to state a claim that defendants violated the California Public Utilities Code.

***Third***, the amount of money at stake is reasonable in light of Defendants' conduct.  "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in light of defendant's actions."[91]  "The [c]ourt considers [Roylance's] declarations, calculations and other documentation of damages in determining if the amount at stake is reasonable."[92]  Roylance

---

[87] *See id.* at ¶ 74; *see also* Docket No. 14 at 11.

[88] *See* Cal. Pub. Util. Code §§ 2871-6; *see also* § 2872(b) ("No person shall operate an automatic dialing-announcing device except in accordance with this article.").

[89] *See* Cal. Pub. Util. Code § 2871.

[90] *See* Docket No. 1 at ¶¶ 20-27, 37-41.

[91] *See Truong Giang Corp. v. Twinstar Tea Corp.*, Case No. C-06-03594-JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).

[92] *See id.*

Case No.: 5:14-cv-02445-PSG
REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT BE GRANTED-IN-PART

seeks a judgment against Mark and Donecia Augustus of $22,500 in statutory damages under the TCPA and $96,000 in punitive damages under California Civil Code Section 3294 and a judgment against ALG of $7,500 in statutory damages under the TCPA and $16,000 in punitive damages or, in the alternative, that ALG be held joint and severally liable for the same damages as Mark and Donecia Augustus.[93] "As the TCPA allows for the award of such damages and the [c]ourt has discretion as to these damages as well as the punitive damages [Roylance] seeks…this factor weighs in favor of entry for default judgment."[94]

**Fourth**, no material facts are in dispute. Following entry of default, the court "takes all well-pleaded facts, except those pertaining to damages, as true."[95] As stated above, Roylance has sufficiently alleged facts to support his claims. Defendants have not appeared in this action and thus did not dispute any of Roylance's allegations.

**Fifth**, the default did not result from excusable neglect. When "the defendant has been properly served or the plaintiff demonstrates the defendant is aware of the lawsuit," this factor weighs in favor of default judgment.[96]

All defendants have been served.[97] No defendant appeared or otherwise responded to the suit, and the clerk entered Defendants' defaults in September 2014.[98] Since then, none of the

---

[93] *See* Docket No. 14 at 2.

[94] *See Heidorn v. BDD Marketing & Management Co., LLC*, Case No. C-13-00229-JCS, 2013 WL 6571629, at *9 (N.D. Cal. Aug. 19, 2013), *report and recommendation adopted* 2013 WL 6571168 (N.D. Cal. Oct. 9, 2013).

[95] *See Truong*, 2007 WL 1545173 at *12.

[96] *See Coach Services, Inc. v. YNM, Inc.*, Case No. 2:10-cv-02326-JST(PLAx), 2011 WL 1752091, at *4 (C.D. Cal. May 6, 2011) (internal citation omitted).

[97] *See* Docket No. 7-1.

[98] *See* Docket No. 8.

Case No.: 5:14-cv-02445-PSG
REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED-IN-PART

1    defendants have notified the court or tendered any excuse for their continued absence from this

2    case.  No circumstances suggest that Defendants' failure to appear was due to excusable neglect.

3        **Sixth**, granting default judgment will not harm public policy.  "While the Federal Rules

4    favor decisions on the merits, this preference standing alone is not dispositive.  A decision on the

5    merits is not possible where defendants [are not participating] in the proceedings.  The baseline

6    preference to adjudicate cases on the merits thus does not preclude a trial court from entering

7    default judgment."[99]  Here, although the Rules of Civil Procedure favor decisions on the merits,

8    such a decision is not possible because defendants are not participating in the proceedings of this

9    case.

10        On balance, the *Eitel* factors support entry of default judgment against ALG and Mark

11   Augustus but not against Donecia Augustus under Section 227(b) and (c) of the TPCA.  The *Eitel*

12   factors also support default judgment against Mark Augustus but not Donecia Augustus under

13   California's False Advertising Act.  The factors do not support the entry of default judgment for

14   Roylance's claim under the California Public Utilities Code against any defendant.

15        The court turns next to the question of remedies.  Roylance has established that he is

16   entitled to treble damages for ALG and Mark Augustus' violations of the TCPA but not to punitive

17   damages under California Civil Code Section 3294.   Although "factual allegations relating to

18   liability are taken as true upon entry of default, allegations as to amount of damages are not

19   automatically accepted."[100]  The plaintiff "is required to prove all damages sought in the

20   complaint."[101]  A "judgment by default shall not be different in kind [or] exceed in amount that

---

[99] *See Trindale v. Reach Media Group, LLC*, Case No. 5:12-cv-04759-PSG, 2014 WL 3572132, at *4 (N.D. Cal. July 18, 2014) (internal citations omitted).

[100] *Truong*, 2007 WL 1545173 at *13.

[101] *Philip Morris USA Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).

18

Case No.: 5:14-cv-02445-PSG
REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT BE GRANTED-IN-PART

prayed for in the [complaint]."[102]   The court may base its award on the declarations submitted by the plaintiff.[103]

The TCPA provides that a person may receive up to $500 in damages for each violation of Section 227(b) and (c).[104]   Both of these subsections also provide that "if the court finds that the defendant willfully or knowingly violated [Section 227(b) or the regulations prescribed pursuant to Section 227(b)-(c)], the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available [in the case of non-willful conduct]."[105]   Roylance contends that the individual defendants are liable for six violations of Section 227(b) and nine violations of Section 227(c) and that ALG is liable for one violation of Section 227(b) and four violations of Section 227(c) or in the alternative for the same violations as the individual defendants.[106]   Based on this count, Roylance argues that he is entitled to trebled damages of $22,500 against the individual defendants and that ALG be held jointly and severally liable for this amount or individually liable for $7,500 in statutory damages.[107]

The court first addresses the question of how many separate violations of the TCPA Roylance has established.   As stated above, Roylance argues that he is entitled to statutory damages for fifteen separate TCPA violations.[108]   Roylance has established six violations of Section 227(b) because the six rerecorded calls he received violated this subsection. Roylance also has established that these six prerecorded calls and the two live calls he received from Mark

---

[102] *See id.* (citing Fed. R. Civ. P. 54(c)).

[103] *See id.*

[104] *See* § 227(b)(3)(B), (c)(5)(B).

[105] *See* § 227(b)(3), (c)(5).

[106] *See* Docket No. 14 at 6, 10.

[107] *See* Docket No. 14 at 6, 10.

[108] *See id.* at 6.

19

Case No.: 5:14-cv-02445-PSG
REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT BE GRANTED-IN-PART

United States District Court
For the Northern District of California

Augustus as well as ALG and Mark Augustus' failure to provide him with a copy of their do-not-call policy violated Section 227(c).[109]  Roylance thus has established that he is entitled to statutory damages for a total of fourteen separate TCPA violations based upon the six prerecorded calls that he received that violated both Section 227(b) and (c) and the two live calls that Mark Augustus made that violated Section 227(c).

The court next finds that Roylance can recover statutory damages for his claims under both Section 227(b) and Section 227(c).  Roylance claims that recovery of damages under both causes of actions is proper because "different violations must be shown in the different causes" since Section 227(b) concerns automated calls and Section 227(c) concerns the FCC's do-not-call regulations.[110]  The Ninth Circuit has not ruled on this issue, but the court finds persuasive the Sixth Circuit's holding that "the fact that the statute includes separate provisions for statutory damages in subsections (b) and (c) suggests that a plaintiff could recover under both."[111]  Accordingly, Roylance may recover damages for both of his TCPA claims because "a person may recover statutory damages for violations of the automated-call requirements" and for violations of "the do-not-call-list requirements…even if both violations occurred in the same telephone call."[112]

Roylance also is entitled to treble damages because his allegations establish that ALG and Mark Augustus' conduct was willful and knowing.  "The court observes that a split in authority

---

[109] Roylance is not entitled to statutory damages for nine separate violations of Section 227(c) because the failure to send Roylance a written policy of ALG's do-not-call list is not a separate violation of Section 227(c) for which Roylance can recover damages.  "The plain language of the statute allows…an individual who has received 'one telephone call within any 12–month period by or on behalf of the same entity in violation of the *regulations* prescribed under this subsection' to bring 'an action to recover for actual monetary loss from *such a violation*.'  This language indicates that a telephone call that violates more than one provision of the regulations is considered to be a single violation rather than multiple violations." *See Heidorn*, 2013 WL 6571629, at *16 (emphasis in original).  Further, Section 227(c)(5) does not provide a separate cause of action for someone who did not receive a written do-not-call policy but who did not receive any calls in violation of the TCPA.

[110] *See* Docket No. 14 at 4.

[111] *See Charvat v. NMP, LLC*, 656 F.3d 440, 448 (6th Cir. 2011).

[112] *See id.* at 449.

20

Case No.: 5:14-cv-02445-PSG
REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT BE GRANTED-IN-PART

1    exists regarding what qualifies" as knowing or willful conduct "warranting trebling."[113]  "Some

2    courts have held that a defendant must know that the making of the call violates the TCPA, while

3    others have held that a defendant need only know that the call is being made."[114]  Roylance argues

4    in favor of the later interpretation, claiming that defendants did not need to know they were

5    violating the TCPA in order to act willfully.[115]  Roylance claims that "[i]ntent to do a wrongful act

6    is not an essential element of willfulness" and that the FCC interprets willfulness to mean "simply

7    that the act of which a violation arises was not an accident or mistake, even if the resulting

8    violation was unintended."[116]

9         The case law supports Roylance's position that a person need not have intent to commit an

10   unlawful act in order to act willfully or knowingly under the TPCA.  For instance, in *Sengenberger*

11   *v. Credit Control Services, Inc.*, the court held that "intentionally" making phone calls that violated

12   the TCPA was sufficient to warrant treble damages because "[a]lthough neither the TCPA nor the

13   FCC regulations define the terms 'willfully or knowingly'…courts have generally interpreted

14   willfulness to imply only that an action was intentional."[117]  Further, *Sengenberger* noted that

---

[113] *See Trindale*, 2014 WL 3572132, at *5 n. 59 (citing *J2 Global Commc'ns, Inc. v. Blue Jay Inc.*, Case No. 4:08-cv-4254-PJH, 2009 WL 4572726, at *7 (N.D. Cal. Dec. 1, 2009) ("There appears to be a split in authority as to what predicate conduct is required before a treble damages award may be issued.").

[114] *See id.* (internal citations omitted).

[115] *See* Docket No. 14 at 4-6.

[116] *See id.* at 5.

[117] Case No. 09-c-2796, 2010 WL 1791270, at *6 (N.D. Ill. May 5, 2010) (internal citation omitted); *see also Bridgeview Health Care Center Ltd. v. Clark*, Case No. 09-C-5601, 2013 WL 1154206, at *7 (N.D. Ill. Mar. 19, 2013) (finding that plaintiff "need not prove that defendant had knowledge of the TCPA's provisions in order to establish that the defendant willfully or knowingly violated the TCPA") (internal citations omitted); *Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, 226 (D. Mass. 2014) ("While neither the TCPA nor FCC regulations provide a definition for willful and knowing, most courts have interpreted the willful or knowing standard to require only that a party's actions were intentional, not that it was aware that it was violating the statute.") (internal citations omitted).

21

United States District Court
For the Northern District of California

"[w]hile the TCPA does not define willful, the Communications Act of 1943, of which the TCPA is a part, defines willful as 'the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[ ], rule or regulation.'"[118]

Roylance's allegations show that ALG and Mark Augustus' TCPA violations were knowing and willful.  ALG and Mark Augustus were aware that the first prerecorded call was made because Mark Augustus followed up on this call and ALG sent a loan package to Roylance regarding this call.[119]  As Roylance notes, the demand letters he sent to Mark Augustus and ALG also provided the defendants with actual notice that five subsequent prerecorded calls he received were illegal.[120]  Further, as Roylance states, blocking the identification of the caller on all the calls he received was a "deliberate choice."[121]

"Because Congress chose to employ a low threshold to assess treble damages, by requiring a caller's actions to be 'knowing' or 'willful' it is important to highlight" that the TCPA gives courts discretion to determine whether treble damages are appropriate."[122]  The court finds that enhanced damages are appropriate here.  As Roylance notes, "there is no indication that [the individual defendants] have stopped using prerecorded calls."[123]  To the contrary, Roylance alleges that Mark Augustus continued "to use prerecorded calls and violate do-not-call requests."[124]

---

[118] *See* 2010 WL 1791270, at *6.

[119] *See* Docket No. 1 at ¶¶ 30-32; *see also* Docket No. 14, Roylance Decl. at ¶ 126.

[120] *See* Docket No. 1 at ¶¶ 33-36; *see also* *Ohley v. Progressive Cas. Ins. Co.*, 993 F.Supp.2d 1220, 1227 (S.D. Cal. 2014) (holding that plaintiff stated a cause of action for treble damages under § 227(b)(1)(A) when plaintiff alleged defendant continued to call him after he told defendant that he "was dialing the wrong number").

[121] *See* Docket No. 14 at 6.

[122] *See Charvet v. Ryan*, 116 Ohio St. 3d 394, 400 (2007).

[123] *See* Docket No. 14 at 11.

[124] *See id.* (Roylance Decl.) at ¶¶ 144-157.

22

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   Awarding treble damages "would serve to deter [defendants] from [making calls that violate

2   TCPA] in the future and thereby promote the purpose of the TCPA."[125]   As stated above, the court

3   finds that ALG and Mark Augustus are jointly and severally liable for fourteen TCPA violations

4   but Donecia Augustus is not liable.   Accordingly, the court recommends that Roylance be awarded

5   treble statutory damages in the amount of $21,000 against ALG and Mark Augustus.

6            Roylance has not shown that punitive damages are proper here. Roylance requests $96,000

7   in punitive damages, based upon "six prerecorded calls at $16,000 each."[126]   Roylance claims that

8   these damages are warranted under Cal. Civ. Code § 3294 which provides:

9            In an action for the breach of an obligation not arising from contract, where it is proven by
           clear and convincing evidence that the defendant has been guilty of oppression, fraud, or
10           malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of
           example and by way of punishing the defendant.
11

12   "In order to determine whether punitive damages should be awarded, the [c]ourt considers: (1) the

13   nature of defendant's acts; (2) the amount of compensatory damages awarded; and (3) the wealth

14   of the defendant."[127]   In determining whether punitive damages are appropriate, the court "cannot

15   make a fully informed determination of whether an award of punitive damages is excessive unless

16   the record contains evidence of a defendant's financial condition."[128]

17            Roylance has not presented sufficient evidence regarding ALG and Mark Augustus' wealth

18   to justify an award of punitive damages.   Roylance claims that the punitive damages he seeks are

19   reasonable because the statutory damages available under the TCPA are "an inadequate deterrent

20   for large telemarketers" like defendants.[129]   Roylance notes that ALG is a large operation, which

21   _____

22   [125] *See J2 Global Commc'ns, Inc.*, 2009 WL 4572726, at *8.

23   [126] *See* Docket No. 1 at 10.

24   [127] *Brantley v. Boyd*, Case No. C-07-6139-MMC, 2013 WL 3766911, at *9 (N.D. Cal. Jul. 16,
     2013) (citing *Prof'l Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*, 727 F.2d
25   1470, 1473 (9th Cir.1984)).

26   [128] *See id.* (internal citation omitted).

27   [129] *See* Docket No. 14 at 7.

28   Case No.: 5:14-cv-02445-PSG
     REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT
     JUDGMENT BE GRANTED-IN-PART

23

United States District Court
For the Northern District of California

1    allegedly includes 268 branches and 93 licensed salespeople.[130]  Roylance also argues that

2    defendants were probably making telemarketing calls "throughout the state" because they were

3    located in Southern California but calling into North California.[131]  Roylance further claims that

4    because the papers given to him stated the loan originator would be paid $1,200, "closing twenty

5    loans would cover the requested statutory damages."[132] Roylance argues that, taken together, these

6    facts show that "the individual [d]efendants could easily have made more than $96,000 by making

7    prerecorded calls throughout the state."[133]

8         "These facts do not adequately establish [ALG and Mark Augustus'] net worth or

9    wealth."[134]  The fact that ALG has a certain number of branches and employees does not establish

10    the net worth or profitability of the corporation.  Further, even if Roylance is correct that ALG and

11    Mark Augustus mounted a large telemarketing campaign, Roylance has not shown that this

12    campaign was successful or profitable.  Likewise, the fact that the loan papers he received listed a

13    fee for the loan originator of $1,200 does not show that ALG and Mark Augustus actually

14    convinced people to sign up for these loans or received any fees from these loans.  It is true that, as

15    Roylance notes, by not participating in the case, the defendants have deprived Roylance of the

16    ability to "learn[] the extent of their profits" and whether there have been "complaints or objections

17    by other consumers."[135]  However, without adequate evidence of ALG and Mark Augustus' wealth

18

19

20

21    [130] *See id.* at 8; *see also* Docket No. 14 (Roylance Decl.) at ¶ 2.

22    [131] *See* Docket No. 14 at 9.

23    [132] *See id.* at 7.

24    [133] *See id.* at 9.

25    [134] *See Brantley*, 2013 WL 3766911 at *9.

26

27    [135] *See* Docket No. 14 at 9.

28

24

Case No.: 5:14-cv-02445-PSG
REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT BE GRANTED-IN-PART

1    or net worth, the court "does not have a sufficient basis to determine the appropriateness of

2    punitive damages."[136]

3        Roylance also has shown that he is entitled to an injunction against Mark Augustus.  In

4    addition to damages, Roylance asks that the individual defendants be permanently enjoined from

5    violating the TCPA, the regulations made under it, California Business & Professions Code Section

6    17500.3 and California Public Utilities Code Sections 2871-2876.[137]  As stated above, because

7    Roylance has not established that Donecia Augustus was liable for any unlawful conduct, the court

8    recommends that Roylance's request for an injunction against her be denied.  Further, Mark

9    Augustus need not been enjoined from violating the California Public Utilities Code because

10   Roylance has not established that Mark Augustus violated this code.

11       However, Roylance has shown that he is entitled to an injunction against Mark Augustus

12   based upon Roylance's TCPA and California's Fair Advertising Law claims.  The TCPA provides

13   for injunctive relief as a remedy.[138]  Likewise, California's Fair Advertising Law "explicitly

14   permit[s] injunctive relief to be sought by any person who has lost money or property as a result of

15   a violation" of that law.[139]  "[I]n order to grant injunctive relief under…section 17535, there must

16

17   [136] *See Brantley*, 2013 WL 3766911 at *9.  Roylance alleges that Mark Augustus and Donecia
     Augustus state that they are connected to an entity called "First Global" and that a website states
18   that a corporation with the similar name of 1st Global Diversified Financial Group, Inc. has at least
     $500,000 in annual revenue. *See* Docket No. 14 (Roylance Decl.) at ¶¶ 26-32.  However, Roylance
19   acknowledges that none of the papers he received identified this entity's "involvement in the
     prerecorded calls" and that he did not see a "clear connection" between this entity and those
20   prerecorded calls. *See id.*  Accordingly, Roylance's allegations regarding 1st Global Diversified
     Inc., which is not a defendant here, do not establish that Mark and Donecia Augustus "make
21   $500,000 in annual revenue with illegal telemarketing" or establish ALG's net worth. *See* Docket
     No. 14 at 8.
22

23   [137] *See* Docket No. 1 at 10-11; Docket No. 14 at 2.

24   [138] *See* § 227(b)(3)(A), (c)(5)(A).

25   [139] *See iYogi Holding PVT Ltd. V. Secure Remote Support, Inc.*, Case No. C-11-0592-CW, 2011
     WL 6291793, at *19 (N.D. Cal. Oct. 25, 2011); *see also* Cal. Bus. & Prof. Code § 17535
26   (providing that "[a]ny person" who "violates or proposes to violate this chapter may be enjoined by
27   any court of competent jurisdiction").

28
     Case No.: 5:14-cv-02445-PSG
     REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT
     JUDGMENT BE GRANTED-IN-PART

1    be a threat that the wrongful conduct will continue."[140]   Because Roylance alleges that Mark

2    Augustus continues "to use prerecorded calls and violate do-not-call requests" the court finds that

3    an injunction under the TCPA and California Fair Advertising Law is appropriate.[141]

### III.

5    Consideration of the *Eitel* factors weighs in favor of granting default judgment against ALG

6    and Mark Augustus but not against Donecia Augustus.   The court ORDERS reassignment to a

7    district judge, and recommends that default judgment entered be entered in favor of Roylance and

8    against ALG and Mark Augustus jointly and severally in the amount of $21,000.   The court also

9    recommends the Mark Augustus be permanently enjoined from violating the TCPA, the regulations

10   promulgated under it and Cal. Bus. & Prof. Code § 17500.3.

**SO ORDERED.**

Dated: March 16, 2015

PAUL S. GREWAL
United States Magistrate Judge

---

[140] *See Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 702 (2006).

[141] *See* Docket No. 14 (Roylance Decl.) at ¶¶ 144-157.

26

Case No.: 5:14-cv-02445-PSG
REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT BE GRANTED-IN-PART